IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

WILLIAM MAYES, §
§
§
Plaintiff, §
§
vs. § Civil Action No. 1:06-CV-100-C
§ ECF
§
MICHAEL J. ASTRUE[1], §
Commissioner of Social Security, §
§
Defendant. §

**MEMORANDUM OPINION AND ORDER**

**THIS CASE** is before the court upon Plaintiff's complaint filed August 1, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on April 4, 2007, and a supplemental brief on April 24, 2007, and Defendant filed a brief on May 31, 2007. On March 16, 2007, Plaintiff consented to having the United States Magistrate Judge conduct any and all proceedings in this case pursuant to 28 U.S.C. § 636(c) (Doc. 23). Defendant filed a notice of consent before a United States Magistrate Judge on March 19, 2007 (Doc. 32). This court has considered the pleadings, the briefs, and the

---

[1] Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this matter for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

## I. STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits protectively on July 2, 2003, alleging disability beginning June 18, 2003. Tr. 18-19, 103-04, 530-32. Plaintiff's applications were denied initially for medical reasons and upon reconsideration because Plaintiff was engaging in substantial gainful activity. Tr. 18, 30-36, 40-43. Plaintiff filed a Request for Hearing by Administrative Law Judge on April 27, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on October 19, 2004. Tr. 18, 44-45, 570-89. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 18, 572-82, 584. John Vorhies, a medical expert ("ME"), appeared and testified as well. Tr. 583, 585, 587. Susan Brooks, a vocational expert ("VE"), appeared but did not testify. Tr. 18. The hearing was continued for the submission of consultative internal medicine and psychological examinations undergone by claimant in May 2005.

A supplemental hearing was held on August 24, 2005. Tr. 18, 560-569. Plaintiff did not appear at the hearing. His attorney, Susan Carpenter, appeared and represented Plaintiff. Susan Brooks, a VE, appeared and testified. Tr. 563-67. The ALJ issued a decision unfavorable to Plaintiff on October 13, 2005. Tr. 15-28.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements through the date of his decision and Plaintiff had not engaged in substantial gainful activity at any time since June 18, 2003. Tr. 19-20, 25. Plaintiff has "severe" impairments, including a history of congestive heart failure secondary to viral myocarditis without residual effects and a seizure disorder. Tr. 20, 25. Plaintiff's severe impairments, singularly or in

combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 20.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 22, 26. The ALJ specifically found that the evidence regarding the intensity, persistence, and limiting effects of Plaintiff's symptomology was inconsistent with a finding of disability.

The ALJ found that Plaintiff could not return to his past relevant work as a retail store manager. Tr. 19, 24, 26. He noted that Plaintiff was considered a "younger individual" with a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 24, 26.

The ALJ found that Plaintiff retained the RFC to perform the exertional requirements of medium work activity, limited to jobs that do not require lifting or carrying 50 pounds more than occasionally and 25 pounds more than frequently or pushing and pulling in the amount of weight given; that do not require standing/walking or sitting more than 6 hours in a 8-hour work day; that do not require climbing ladders, ropes, and scaffolds or working at unprotected heights or around dangerous moving machinery; and, due to mental impairments, jobs that are limited to understanding, remembering, and carrying out detailed, but not complex, instructions. Tr. 23-24, 26. Having found that Plaintiff could not perform the full range of medium work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational

adjustment to other work despite his severe impairments. Tr. 25-26. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of cashier, with 120,000 jobs in Texas and 1.5 million jobs nationally; cafeteria attendant, with 5,000 jobs in Texas and 75,000 jobs nationally; and fast food worker, with 13,000 jobs in Texas and 400,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 25-26.

Plaintiff submitted a Request for Review of Hearing Decision/Order on November 3, 2005. Tr. 13-14. After granting a 25-day extension to submit additional evidence, the Appeals Council issued its opinion on May 26, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 7-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On August 1, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 25-26.

### III. DISCUSSION

Plaintiff claims that this case should be remanded to incorporate pages missing from the record, that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence, and that the ALJ erred in assessing Plaintiff's credibility.

**A.     Whether this case should be remanded to obtain and incorporate the missing pages from the ALJ's decision into the administrative record.**

Plaintiff sought remand to obtain and incorporate pages missing from the ALJ's decision into the administrative record. A supplemental transcript of the record was filed on April 17, 2007. Therefore, the pages originally missing from the administrative record have been supplied and do not provide a basis for remand.

**B.     Whether the ALJ erred in weighing the opinions of the treating and examining physicians and the evidence of record in making his RFC determination.**

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000). Plaintiff claims that the ALJ's decision is not supported by substantial evidence in the record because the ALJ failed to give appropriate weight to the medical opinions of Dr. Teresa Manax, Plaintiff's treating physician, in determining Plaintiff's RFC and regarding the disabling limitations imposed by his seizure disorder and depression

Plaintiff argues that the ALJ erred in weighing the opinions of his physicians in this case. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was thus not required to give any weight to the opinions of the physicians who indicated that Plaintiff was disabled.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d 456. SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> If any of the [six] factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for

disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

In this case the ALJ clearly did not give controlling weight to Dr. Manax's opinion as expressed in the functional capacity assessments which were completed in October 2004. Tr. 21. The ALJ noted Dr. Manax's opinion that Plaintiff experienced one or two seizures per month without warning or precipitating factors, characterized by post-ictal confusion, exhaustion, irritability, severe headaches, and muscle strain which incapacitated him for 36 hours after a seizure. *Id.* The ALJ also noted Dr. Manax's opinion that Plaintiff had mental problems including depression, irritability, social isolation, poor self esteem, short attention span, memory problems, and behavior extremes. *Id.*

The ALJ also noted that in her progress notes from June 2003 through March 2004, Dr. Manax made no mention of seizure activity. Tr. 21. Plaintiff argues that these progress notes indicate that Plaintiff was treated for his seizure disorder. He argues that the ALJ "misstated the nature of the seizure disorder and the lack of records regarding this condition." Pl. Brief at 5. The ALJ found that Plaintiff had a seizure disorder which was severe; he did not identify this seizure disorder specifically as "juvenile myoclonic epilepsy." Tr. 20. He did, however, specifically note that Dr. Manax opined that Plaintiff "had a seizure disorder (i.e., juvenile myclonic epilepsy) of disabling proportions." Tr. 21. Plaintiff argues that this case should be remanded "for the ALJ to better educate himself before making a decision." Pl. Brief at 6. However, the ALJ's decision does not indicate that Plaintiff was not treated for his seizure disorder during the relevant period, and the ALJ's finding that Plaintiff had a "severe" seizure disorder, which he specifically noted was identified as "juvenile myoclonic epilepsy" by the treating physician, is supported by substantial evidence in the record.

The ALJ correctly noted that Dr. Manax's progress notes from June 2003 through March 2004 made no mention of Plaintiff experiencing seizures at a frequency of one of two per month, as indicated in the assessment completed by Dr. Manax. The ALJ also noted that a progress note from Lake Whitney Medical Center dated February 2003 indicated that Plaintiff had not had a seizure since June of 2002. Tr. 21, 330-31. The ALJ also noted that there are numerous records from visits to the emergency room, but it did not appear that these visits were for treatment for the seizures or the period of debilitating post-ictal activity described by Dr. Manax. The ALJ noted that the medical evidence relates that Plaintiff has had a seizure disorder since age 11. Tr. 22. The ALJ noted Plaintiff's testimony of having seizures and continuing to work at Walgreens. Tr. 23. Indeed, Plaintiff testified that he had a seizure while working at Sam's Club, where he worked from 1998 to 2001. Tr. 574-75. He testified that while working at Walgreens, he had seizures "twice, three times a month" or sometimes once a month. Tr. 584. Plaintiff testified that his seizure activity had been the same over the last five years. Tr. 585. He testified that he stopped working at Walgreens because he had a right shoulder rotator cuff tear. Tr. 582. The ALJ noted Plaintiff's testimony of taking Depakote for four and one-half years with no dosage change in the previous two or three years. Tr. 23. A progress note from December 13, 2004, indicates that Plaintiff had experienced no seizures for six months. Tr. 507.

The record demonstrates that in rejecting Dr. Manax's opinion that Plaintiff had a disabling seizure disorder, the ALJ discussed and compared Dr. Manax's opinion with her own treatment and progress notes, the treatment and progress notes of other treating sources, inconsistencies between such notes and opinions, and Plaintiff's own testimony. The ALJ did not find that Plaintiff does not have a seizure disorder or that he has not had a seizure. The record demonstrates that Plaintiff was treated for his seizure disorder during the relevant period. The ALJ extensively discussed in his

opinion Plaintiff's treatment by Dr. Manax and other physicians, he noted that Dr. Manax treated Plaintiff for various complaints which were reflected in her treatment and progress notes, although seizures occurring once or twice a month were not reflected in such notes, and he noted the inconsistency of Dr. Manax's opinion with the other evidence, including the other medical evidence, in the record. The ALJ also noted that Dr. Manax was a family physician. Considering the ALJ's opinion and the record as a whole, the court finds that the ALJ appropriately weighed Dr. Manax's opinion regarding the limitations imposed by Plaintiff's seizure disorder, and the ALJ's determination that such opinion was inconsistent with Dr. Manax's own progress and treatment notes and the record as a whole is supported by substantial evidence. While the ALJ did not specify each of the criteria under *Newton*, he performed a detailed analysis in which he appropriately addressed these factors. I find that the ALJ did not err in weighing the opinion of Dr. Manax regarding Plaintiff's seizure disorder.

Plaintiff also argues that the ALJ erred by failing to find that his depression was a disabling condition. In evaluating mental disorders under the Listing of Impairments, the Commissioner first considers whether the claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00. Upon such a determination, the Commissioner then considers the criteria set forth in paragraphs B and C, which describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id*. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description that is manifested by the medical findings. *Id*. The Commissioner will first consider the paragraph B criteria before the paragraph C criteria and will assess the paragraph C criteria only if it is found that the paragraph B criteria are not satisfied. *Id*. The claimant will be found to meet a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both

paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied, thereby establishing presumptive disability. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00. Plaintiff argues that he has met the criteria of § 12.04, Affective Disorders, and has shown presumptive disability. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1. In order to meet the listing for § 12.04 for Affective Disorders, the Plaintiff must show medically documented persistence of depressive syndrome[2] or manic syndrome[3] or bipolar syndrome,[4] which must result in two of the following: marked restriction of the activities of daily living; or marked difficulty maintaining social functioning; or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B). Alternatively, the Plaintiff may demonstrate a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual

---

[2] Depressive syndrome is characterized by at least four of the following: anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with change in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or hallucinations, or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 A(1)(a)-(I).

[3] Manic syndrome is characterized by at least three of the following: hyperactivity; or pressure of speech; or flight of ideas; or inflated self-esteem; or decreased need for sleep; or easy distractability; or involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (A)(2)(a)-(h).

[4] Bipolar syndrome is characterized with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(3).

to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (C).

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals the listings. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a and 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria. A five-

point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 404.1520a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(2). The Psychiatric Review Technique form ("PRTF") represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09; 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

Plaintiff argues that he has depression. He notes that a treatment provider at MHMR indicated in October 2004 that he had an affective disorder with sleep disturbance. He notes that he was treated for a suicide attempt in June 2004 and that he was treated by Dr. Manax and others for depression. The ALJ did not find that Plaintiff had a medically determinable or "severe" mental impairment. Tr. 20. He did not make any of the "part b" findings. The ALJ noted that Dr. Manax gave Plaintiff a sample of anti-depressant medication and suggested that Plaintiff pursue treatment with MHMR. Tr. 21. The ALJ noted that Plaintiff underwent a consultative psychological

examination in May 2005, where the examiner opined that Plaintiff had an adjustment disorder with depressed and anxious mood.

Plaintiff argues that the ALJ's determination that Plaintiff would be limited to carrying out detailed instructions is contrary to the findings of the consultative psychologist. Pl. Brief at 9. However, the psychological consultative examiner indicated that Plaintiff "should have no impairment in understanding, remembering, and carrying out short, simple instructions" and further opined that "his ability to understand, remember, and carry [out] detailed instructions is unimpaired." Tr. 493. The ALJ noted these findings, including the consultative psychologist's opinion that Plaintiff's ability to withstand changes associated with an 8-hour work day was moderately impaired. Tr. 22. The ALJ ultimately did not incorporate a limitation to reflect ability to withstand changes associated with an 8-hour work day. Dr. Manax indicated that Plaintiff could tolerate moderate work stress. Tr. 380.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations). Here, the ALJ included those limitations he found supported by the record in his RFC assessment and in his hypothetical questions. The ALJ was not required to incorporate the opinion of the examining psychologist as to Plaintiff's ability to handle stress and change during an 8-hour work day into his RFC finding or his hypothetical question if he did not find such limitations supported by the record.

Plaintiff also argues that this case should be remanded for a determination of "when and if there was any improvement" in his severe heart condition and to what extent. The ALJ noted that Plaintiff was treated for congestive heart failure and associated sequelae from June through December 2003. The record supports this finding. The medical evidence indicates that Plaintiff's heart condition was severe and that on July 2, 2003, Dr. James T. Gilley noted that Plaintiff may need a transplant. Tr. 287. Plaintiff required treatment on several occasions, including hospitalizations and treatment at the emergency department. However, by October 23, 2003, Dr. Timothy M. Welter noted that Plaintiff had a normal chest x-ray, with a normal heart. Tr. 367. He noted that Plaintiff was discharged in excellent condition. *Id*. Plaintiff was again treated for chest pain on December 31, 2003, where he was discharged without any change in therapy, with a diagnosis of non-specific chest pain. Tr. 368-69. In addition to the records of the treating physicians, the ME testified that all evidence of active myocarditis, pericarditis, and pancreatitis appeared to have resolved. Tr. 585. The record does not contain other evidence indicating that Plaintiff's congestive heart failure and associated sequelae posed ongoing problems thereafter. Plaintiff has the burden of proving that he has a medically determinable physical or mental impairment lasting at least 12 months that prevents him from engaging in substantial gainful activity. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1). There is no basis for remanding this matter to determine when Plaintiff's cardiac impairment improved; the ALJ's opinion on this issue is supported by substantial evidence in the record.

Plaintiff argues that the RFC determination is not supported by substantial evidence in the record. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The record demonstrates that the ALJ found that Plaintiff could perform a limited range of work at the medium exertional level. Tr. 26. He specifically incorporated limitations on standing/walking and sitting to six hours per 8-hour work day. *Id*. He incorporated limitations on climbing ladders, ropes, and scaffolds; and performing work at unprotected heights, around dangerous moving machinery, and requiring the operation of a motor vehicle. *Id*. He also included a limitation to work requiring Plaintiff to understand, remember, and carry out detailed, but not complex, instructions. *Id*. This RFC determination incorporates certain limitations noted by the various consultative examiners, the medical expert, certain portions of Plaintiff's testimony, and other evidence of record.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790.

The court finds that the ALJ did not err in making his RFC determination, which is supported by substantial evidence in the record. The court further finds that the ALJ did not err in evaluating and weighing the medical opinions, including the opinions of Plaintiff's treating physicians, that the ALJ did not err in evaluating Plaintiff's complaints of depression, and that a remand for a determination of when Plaintiff's heart condition improved is not necessary or appropriate in this case.

C. **Whether the ALJ erred in making his credibility determination**.

Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility and erred in finding that his allegations regarding the limitations imposed by his impairments were not entirely

credible. Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id*.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024

(5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

In his decision the ALJ found that Plaintiff's subjective allegations were inconsistent with the evidence of record regarding the intensity, persistence, and limiting of effects of his impairments and the symptoms imposed thereof. Tr. 22. The ALJ discussed the inconsistencies in the Plaintiff's complaints of seizure activity and the medical evidence of record. Tr. 22-23. The ALJ noted that Plaintiff testified that he complained of seizure activity at the same level he experienced while driving and while working as a manager at Walgreens. Tr. 23. He discussed the medications that Plaintiff took, Plaintiff's complaints that sleeplessness increased his seizure activity, and the medical and pharmacy records. *Id*. The ALJ extensively discussed the objective evidence and subjective allegations regarding Plaintiff's seizure disorder and alleged mental impairment. He noted the medical evidence regarding Plaintiff's treatment, and the inconsistences between the subjective allegations, the medical reports, the opinions of the treating and consultative medical providers, and Plaintiff's testimony as to his seizures and work activities. The ALJ appropriately weighed the objective evidence against the medical findings and Plaintiff's reports of his limitations and the subjective allegations of symptomology. The record demonstrates that the ALJ complied with the requirements of SSR 96-7p in assessing Plaintiff's subjective allegations and in making his credibility determination. SSR 96-7p provides that in making the credibility determination, the ALJ may consider "the medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or

psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." The ALJ is also instructed to consider the entire record. SSR 96-7p. The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations regarding the limitations imposed by his seizure disorder, in making the credibility determination. He did not err in considering the evidence of Plaintiff's seizure disorder and alleged mental impairment, including Plaintiff's subjective allegations, in the record. He did not err by failing to adequately reconcile inconsistencies in the evidence,. The court finds that the ALJ did not err in finding that Plaintiff's subjective allegations of seizure activity at a disabling level were not entirely credible, to the extent that Plaintiff claims that impairments and the limitations imposed thereof were disabling.

The court further finds that the ALJ's opinion is supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the Commissioner's decision should be affirmed and that the Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the Commissioner's decision is **AFFIRMED** and that the Plaintiff's complaint filed August 1, 2006, is **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this order shall be entered.

DATED this 21st day of March, 2008.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**